IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

GENESCO INC.,

              Plaintiff,

     v.

VISA U.S.A. INC., VISA, INC., AND
VISA INTERNATIONAL SERVICE
ASSOCIATION,

              Defendants.

Civil Action No. 3:13-CV-0202
Chief Judge William J. Haynes, Jr.

JURY DEMAND

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF GENESCO INC.'S MOTION
FOR SUMMARY JUDGMENT ON ITS FIRST CAUSE OF ACTION OR,
ALTERNATIVELY, FOR PARTIAL SUMMARY JUDGMENT ON ITS SIXTH AND
<u>SEVENTH CAUSES OF ACTION</u>**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

BACKGROUND ....................................................................................................... 7

    A.    The Parties ................................................................................................ 7

    B.    The Acquiring Banks ............................................................................... 7

    C.    The Visa International Operating Regulations ....................................... 9

    D.    The Non-Compliance Fines .................................................................... 9

ARGUMENT ........................................................................................................... 10

I.    Normal Principles of Contract Interpretation Apply to the VIOR ...................... 11

II.    Because VIOR § 9032 Is Not a Valid Liquidated Damages Provision Under California Law, the Non-Compliance Fines Were Not Validly Imposed as Liquidated Damages for the Acquiring Banks' Alleged CISP Violations and Hence Constituted Unlawful Penalties by Reason of Such Alleged Violations ..................................................................... 13

    A.    VIOR § 9032 Does Not "Liquidate" Damages for Breach of VIOR § 8031, as Required by Cal. Civ. Code § 1671(b), Because Instead of Settling the Amount of Such Damages in Advance by Agreement, It Leaves the Damage Amount Imposed Under VIOR § 9032 to Visa's Unfettered, After-the-Fact Discretion, and Because It Leaves Open the Possibility of Additional Liability Being Imposed by Reason of the Breach ............................................................ 14

    B.    VIOR § 9032 Is "Unreasonable" Within the Meaning of Cal. Civ. Code § 1671(b) Because the Amounts Imposable by Visa Thereunder Bear No Relationship to the Range of Actual Damages that Visa and the Acquiring Banks Could Have Anticipated Would Flow from an Acquiring Bank's Failure to Ensure the PCI DSS Compliance of One of its Merchants ............................................................ 18

CONCLUSION ....................................................................................................... 23

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Atel Financial Corp. v. Quaker Coal Co.*,
132 F. Supp. 2d 1233 (N.D. Cal. 2001) .................................................................................18

*Caito v. United California Bank*,
20 Cal. 3d 694 (1978) .............................................................................................................10

*Chodos v. West Publ'g Co.*,
292 F.3d 992 (9th Cir. 2002) ..................................................................................................15

*Dollar Tree Stores Inc. v. Toyama Partners LLC, et al.*,
875 F. Supp. 2d 1058 (N.D. Cal. 2012) ....................................................................... 10-11, 21

*El Centro Mall, LLC v. Payless ShoeSource, Inc.*,
94 Cal. Rptr. 3d 43 (Ct. App. 2009)................................................................................15, 16

*Garrett v. Coast & S. Fed. Sav. & Loan Ass'n*,
9 Cal. 3d 731 (1970) ....................................................................................................... 18-19, 29

*Genesco Inc. v. Visa U.S.A. Inc., et al.*,
2013 WL 3790647 (M.D. Tenn. July 18, 2013) .................................................................6, 11

*Graham v. Scissor-Tail, Inc.*,
623 P.2d 165 (Cal. 1981) ..........................................................................................................3

*Guthrie v. Am. Protection Indus.*,
206 Cal. Rptr. 834 (Ct. App. 1984) .......................................................................................16

*Harbor Island Holdings v. Kim*,
132 Cal. Rptr. 2d 406 (Ct. App. 2003)............................................................................11, 16

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Privacy Litig.*,
2011 WL 1232352 (S.D. Tex. Mar. 31, 2011)........................................................................12

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Privacy Litig.*,
2012 WL 896256 (S.D. Tex. Mar. 14, 2012)..........................................................................12

*In re TJX Cos. Retail Sec. Breach Litig.*,
564 F.3d 489 (1st Cir. 2009)....................................................................................................12

*Laiblin v. San Joaquin Agric. Corp.*,
213 P. 529 (Cal. Ct. App. 1923) ...............................................................................................3

*Los Angeles City Sch. Dist. v. Landier Mgmt. Co.*,
2 Cal. Rptr. 662 (Ct. App. 1960)............................................................................................20

ii

*Paramount Farms, Inc. v. Ventilex B.V.*,
735 F. Supp. 2d 1189 (E.D. Cal. 2010)....................................................................16

*Ridgley v. Topa Thrift & Loan Ass'n*,
953 P.2d 484 (Cal. 1998) ....................................................................... passim

*Sehulster Tunnels/Pre-Con v. Traylor Bros., Inc./Obayashi Corp.*,
4 Cal. Rptr. 3d 655 (Ct. App. 2003)........................................................................3

STATUTES

Cal. Civ. Code § 1638 ....................................................................................12

Cal. Civ. Code § 1654 ....................................................................................12

Cal. Civ. Code § 1671 ............................................................................ passim

OTHER AUTHORITIES

22 AM. JUR. 2D *Damages* § 489 .....................................................................15

73 AM. JUR. 2D *Subrogation* § 1 ...................................................................10

BLACK'S LAW DICTIONARY 942 (7th ed. 1999) ...........................................15

Fed. R. Civ. P. 56(a) ..........................................................................1, 6, 11

W. Stephen Cannon & Michael McCormack, *"The Currency of Progress?" Visa and MasterCard Arrogate Governmental Powers in the Name of Card System Security*,
HOSPITALITY LAWYER (Dec. 2009) ................................................................21

WEBSTER'S II NEW COLLEGE DICTIONARY 655 (3d ed. 2005)........................16

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, Plaintiff Genesco Inc. ("Genesco") respectfully submits this Memorandum of Law in Support of its Motion for Summary Judgment on Its First Cause of Action or, Alternatively, for Partial Summary Judgment on Its Sixth and Seventh Causes of Action. Accompanying this motion are Genesco's Local Rule 56.01 Statement of Undisputed Material Facts ("Rule 56.01 Statement"), which includes relevant record citations, and the Affidavit of Seth C. Harrington ("Harrington Aff."), which attaches the relevant documentation.

## **INTRODUCTION**

In 2010, Genesco announced that it was the victim of a sophisticated cybercrime attack against its computer system where criminals attempted to capture unencrypted data from credit cards and debit cards ("payment cards") (the "Intrusion"). Rule 56.01 Statement ¶ 12. Defendants Visa Inc., Visa U.S.A. Inc., and Visa International Service Association (collectively, "Visa") imposed on and collected from the two banks that had contracted to process Genesco's Visa transactions – Wells Fargo Bank, N.A. ("Wells Fargo") and Fifth Third Financial Corporation ("Fifth Third," and together with Wells Fargo, the "Acquiring Banks") – over $13 million in "non-compliance fines" and "issuer reimbursement assessments." *Id.* ¶¶ 14-18; 22-25. The Acquiring Banks in turn collected these fines and assessments from Genesco pursuant to Genesco's contractual obligation to indemnify the Acquiring Banks against such fines and assessments, whether or not they were lawfully imposed on and collected from the Acquiring Banks by Visa. *Id.* ¶¶ 19-20; 26-27.

Genesco commenced this action against Visa seeking to recover the amount of Visa's fines and assessments related to the Intrusion, alleging that Visa's imposition and collection of these fines and assessments had violated either legal rights of the Acquiring Banks that Genesco

1

now held as the Acquiring Banks' assignee and/or subrogee or, alternatively, legal rights that Genesco held directly against Visa. The First Cause of Action in Genesco's Complaint, and Genesco's present motion for summary judgment on that cause of action, both relate solely to the *fines* that Visa imposed by reason of the Intrusion. *Id*. ¶ 28. On the other hand, the Sixth and Seventh Causes of Action in Genesco's Complaint, which are pleaded in the alternative to the First through Fifth Causes of Action, seek recovery of *both* Visa's fines *and* its assessments related to the Intrusion, *id*. ¶¶ 29-30, so in the alternative, Genesco's present motion seeks only *partial* summary judgment on the Sixth and Seventh Causes of Action, *i.e.*, only insofar as those causes of action relate to Visa's Intrusion-related fines.

Visa's contracts with the Acquiring Banks mandate that they abide by the Visa International Operating Regulations ("VIOR"). *Id*. ¶ 6. Among its many other provisions, the VIOR require that when banks (like the Acquiring Banks) contract to process Visa transactions for merchants (like Genesco), such banks must ensure that their merchants comply with Visa's Cardholder Information Security Program ("CISP"), including the Payment Card Industry Data Security Standards ("PCI DSS"), a set of security requirements developed by the card brands (including Visa). *Id*. ¶ 7; s*ee* VIOR ID# 010410-010410-0008031 ("VIOR § 8031") (included in Harrington Aff., Ex. A). The VIOR also purportedly permit Visa to impose "fines" on banks like the Acquiring Banks in the event they breach their contractual obligation under the VIOR to ensure a merchant's compliance with CISP provisions such as the PCI DSS. *Id.* ¶ 9; *see* VIOR ID# 010410-010410-0009032 ("VIOR § 9032") (included in Harrington Aff., Ex. A). Here, following the Intrusion, Visa imposed on, and collected from, the Acquiring Banks $10,000 of such "non-compliance fines" under VIOR §§ 8031 and 9032 (the "Non-Compliance Fines"). Rule 56.01 Statement ¶¶ 14-18. These fine amounts were in turn collected by the Acquiring

Banks from Genesco pursuant to its indemnity obligation under its separate agreements with them, whereupon Genesco became subrogated to (and in the case of Wells Fargo, the assignee of) any legal right the Acquiring Banks had to obtain recovery of the Non-Compliance Fines from Visa. *Id.* ¶¶ 19-20.

Genesco has numerous arguments as to why Visa's imposition and collection of the Non-Compliance Fines violated Visa's contracts with the Acquiring Banks and why, as a result, Genesco is entitled to recover the amount of the Non-Compliance Fines pursuant to its First Cause of Action or, alternatively, pursuant to its Sixth and Seventh Causes of Action. These arguments were included in the appeals of the Non-Compliance Fines submitted to Visa by the Acquiring Banks, which appeals have been pending before Visa since 2011, but to date have not been ruled upon. *Id.* ¶ 21.[1] For example, Genesco contends that it did not in fact violate the PCI DSS in the manner claimed by Visa and that, as a result, the Acquiring Banks did not breach their contractual obligation under VIOR § 8031 to ensure Genesco's compliance with the PCI DSS. *Id.* ¶ 28. Moreover, Genesco contends that when it imposed the Non-Compliance Fines Visa did not follow the VIOR's required process for imposing such fines under VIOR § 9032, making the imposition and collection of the Non-Compliance Fines invalid whether or not

---

[1] Genesco is not required to await a decision by Visa on the appeals of the Non-Compliance Fines before pressing its First Cause of Action. First, because the timing of such a decision is left entirely to Visa's unfettered discretion, Visa could thereby avoid review by never ruling on the appeals. Second, the appeal is not a condition precedent to the rights of the Acquiring Banks to recover the amount of the Non-Compliance Fines based on Visa's breach of contract because there are no "express words or necessary implication" in the VIOR that make the appeals such a condition precedent. *See Laiblin v. San Joaquin Agric. Corp.*, 213 P. 529, 537 (Cal. Ct. App. 1923) ("An arbitration clause of a contract will not be construed as ousting the courts of jurisdiction unless such construction is inevitable, so that, unless the clause is made a condition precedent by express words or necessary implication, it will be construed as merely collateral to the liability clause and is no bar to an action without an award.") (quotation marks omitted). Finally, under California law, contractual provisions that designate one of the parties the exclusive arbitrator of a dispute are presumptively biased and therefore illusory. *Graham v. Scissor-Tail, Inc.*, 623 P.2d 165, 177 (Cal. 1981) ("[A] contract which purports to designate one of the parties as the arbitrator of all disputes arising thereunder is to this extent illusory—the reason being that the party so designated will have an interest in the outcome which, in the view of the law, will render fair and reasoned decision, based on the evidence presented, a virtual impossibility."); *see Sehulster Tunnels/Pre-Con v. Traylor Bros., Inc./Obayashi Corp.*, 4 Cal. Rptr. 3d 655, 665 (Ct. App. 2003) ("An agreement to submit a dispute to ADR for a binding decision will not be enforced if the designated decisional body is so associated with a party that it is presumptively biased in favor of that party.").

Genesco violated PCI DSS in the manner alleged by Visa. *Id.* Given the factual nature of these particular contentions made by Genesco, Genesco has requested discovery from Visa relative to those contentions and expects to request further such discovery in the future. *Id.* ¶¶ 31, 33. Visa, for its part, disputed Genesco's right to certain of that requested discovery, which dispute necessitated a meet and confer process to resolve that dispute. *Id.* ¶ 32.

As matters currently stand, then, the parties are about to spend significant resources either conducting, or arguing between themselves and potentially before the Court about conducting, fact discovery relative to the validity of Visa's assessment of the Non-Compliance Fines. Genesco believes, however, that the expenditure of the parties' (and the Court's) resources on discovery issues regarding the Non-Compliance Fines can and should be avoided by resolving Genesco's separate, purely legal contention (*see* Compl. ¶ 51) that Visa breached its contracts with the Acquiring Banks because the Non-Compliance Fines constitute an unenforceable penalty under California law and that, therefore, the VIOR do not permit Visa to withhold the amount of Non-Compliance Fines. Accordingly, based on that contention, Genesco is hereby moving for the entry of judgment on its First Cause of Action, or in the alternative for partial summary judgment on its Sixth and Seventh Causes of Action, *as a matter of law*.

In bringing this motion, Genesco recognizes that it is somewhat unusual for summary judgment to be sought, this early in a case, on a single claim in a multi-claim complaint. Indeed, Genesco had hoped that the Acquiring Banks' two-year-old appeal of Visa's imposition of the Non-Compliance Fines, which advanced to Visa all of the arguments Genesco now advances to the Court by means of this Motion (*see* Rule 56.01 Statement ¶ 21), would long ago have resulted in Visa's returning the $10,000 in question, avoiding the Court's ever having to address the issue at all. Unfortunately, however, Visa adamantly refuses to return the money, and

4

Genesco therefore remains out the $10,000, leaving Genesco with no choice but to ask the Court to order Visa to give Genesco the $10,000 back. Taking all these circumstances into account, Genesco believes an early summary judgment motion as to the Non-Compliance Fines is entirely appropriate given the unusual situation presented here.

The grounds for Genesco's motion are straightforward. The Non-Compliance Fines indisputably do not constitute Visa's *actual* damages by reason of the Acquiring Banks' alleged breaches of their contractual duty under VIOR § 8031 to ensure Genesco's PCI DSS compliance. Thus, unless VIOR § 9032 constitutes a valid *liquidated* damages provision for the Acquiring Banks' alleged breach of that duty, under California law, the Non-Compliance Fines were a contractual penalty and, as such, were legally unenforceable. California law makes a liquidated damages provision invalid unless it represents "the result of a reasonable endeavor by the parties to estimate a fair average compensation for any loss that may be sustained" by the non-breaching party as a result of the breach. *Ridgley v. Topa Thrift & Loan Ass'n*, 953 P.2d 484, 488 (Cal. 1998) (internal quotation marks and citation omitted). VIOR § 9032 is a penalty under California law, and therefore invalid, because it leaves determination of the damages amount to Visa's unfettered, after-the-fact, discretion; because it leaves open the possibility of additional liability as a result of the breach; and because Visa does not even pretend that the "fines" it imposes under VIOR § 9032 are intended to estimate fair compensation to Visa for any loss it may have sustained by reason of the CISP violations on which such fines are based. To the contrary, such fines are intended to *punish* the violator for having committed the violation, to *coerce* the violator into correcting the violation, and to *deter* the violator from committing a future violation. *Indeed, VIOR § 9032 **<u>itself</u>** expressly describes such fines as "**<u>penalties</u>**" for a bank's having violated the CISP.*

In short, the question of whether the Non-Compliance Fines are enforceable as liquidated damages for the Acquiring Banks' alleged breaches of their duty to ensure Genesco's PCI DSS compliance, or instead constitute an unenforceable penalty for such alleged breaches, is a question of law that can and should be decided by the Court *right now* before the parties engage in (and involve the Court in administering) months of discovery relative to the other issues raised by Visa's assessment and imposition of the Non-Compliance Fines. Assuming the Court agrees with Genesco that the Non-Compliance Fines were unenforceable penalties, that conclusion alone will suffice to enable the Court to conclude that Visa's assessment and imposition of the Non-Compliance Fines violated Visa's contracts with the Acquiring Banks, as alleged in Genesco's First Cause of Action. Moreover, under this Court's ruling of July 18, 2013, that conclusion will also in and of itself suffice to establish Visa's direct liability to Genesco for the amount of the Non-Compliance Fines under Genesco's Sixth and Seventh causes of action. *See Genesco Inc. v. Visa U.S.A. Inc., et al.*, No. 3:13cv202, 2013 WL 3790647, at *23 (M.D. Tenn. July 18, 2013) (holding that, to the extent Visa's fines and assessments are unenforceable penalties, "Genesco's complaint states viable and plausible UCL and common law claims under California law for which restitution, as the actual payer of these assessments and fines, is a viable remedy under California law"). Accordingly, for the reasons summarized above and detailed below, Genesco respectfully moves the Court, pursuant to Fed. R. Civ. P. 56(a), for the entry of summary judgment in Genesco's favor on Genesco's First Cause of Action or, alternatively, for the entry of partial summary judgment in Genesco's favor on Genesco's Sixth and Seventh Causes of Action insofar as those causes of action relate to the Non-Compliance Fines.

6

## BACKGROUND

The facts material to Genesco's present motion are, as shown by the Rule 56.01 Statement and the supporting documentation cited therein, all beyond any genuine dispute.

### A.    The Parties

Genesco is a specialty retailer of footwear, headwear, sports apparel, and accessories throughout the United States, Canada, United Kingdom, and the Republic of Ireland, principally under the brand names Journeys, Journeys Kidz, Shi by Journeys, Underground by Journeys, Schuh, Lids, Lids Locker Room, and Johnston & Murphy.  Rule 56.01 Statement ¶ 1.

Defendant Visa Inc. operates a payment system pursuant to which it contracts with financial institutions for the purpose of enabling those institutions to offer their customers (both cardholders and merchants) the ability to conduct payment transactions by means of credit and debit cards (jointly, "payment cards") bearing the Visa logo.  *Id.* ¶ 2.  Defendant Visa U.S.A. Inc. is the principal operating subsidiary in the United States for Visa, Inc., and Defendant Visa International Service Association operates a global processing platform that provides processing services for payment cards.  *Id.*

### B.    The Acquiring Banks

In order for a merchant to accept Visa-branded payment cards in payment for transactions made at its stores, the merchant must contract with a financial institution that has entered into a license agreement with Visa authorizing the institution to participate in the Visa network as an "acquiring bank."  *Id.* ¶ 6.  An "acquiring bank" participating in the Visa network contracts with merchants, on the one hand, and separately with Visa, on the other hand, to submit into the Visa network transactions made at the merchants' locations using Visa-branded payment cards.  *Id.* Wells Fargo is Genesco's acquiring bank for Visa Credit Card and Non-PIN Debit Card

7

Transactions and Fifth Third is Genesco's acquiring bank for Visa PIN Debit Card Transactions. *Id.* ¶ 5.

Genesco's contract with Wells Fargo (the "Wells Fargo Agreement") provides, in relevant part, that "[Genesco] agree[s] to pay any fines imposed on us by any Association resulting from Chargebacks and any other fees or fines imposed by an Association with respect to your acts or omissions," and "[Genesco] agree[s] to indemnify and hold us harmless from and against all losses, liabilities, damages and expenses . . . arising out of any third party indemnifications we are obligated to make as a result of [Genesco's] actions (including indemnification of any Association or Issuer)." *Id.* ¶ 10.

Genesco's contract with Fifth Third (the "Fifth Third Agreement" and, together with the Wells Fargo Agreement, the "Acquiring Bank Agreements") provides, in relevant part, "Notwithstanding any other provision of this Agreement, [Genesco] shall be responsible for all fees, assessments and penalties imposed by third party providers such as, but not limited to, VISA, MasterCard, Other Networks and telecommunication companies, and any charges or increases shall automatically become effective without notice and shall be immediately payable by [Genesco] when assessed by [Fifth Third]." *Id.* ¶ 11.

On April 21, 2011, Genesco, Wells Fargo, and Wells Fargo Merchant Services, L.L.C. entered into the Reserve Agreement, under which Genesco agreed to fund a reserve account with regard to potential fines, issuer fraud, operating expense assessments, and/or other assessments anticipated to be imposed on Wells Fargo by Visa and the other card brands in regard to the Intrusion. *Id.* ¶ 13. In the Reserve Agreement, Genesco acknowledged that it had an obligation to indemnify Wells Fargo for the amount of such assessments and Wells Fargo agreed that, upon having been reimbursed by Genesco for the amount of any such fine or assessment out of the

8

reserve account or otherwise, Wells Fargo would be deemed to have assigned, transferred, and conveyed to Genesco any and all rights, claims or causes of action that Wells Fargo may have against Visa to obtain reimbursement of any portion of such fine or assessment, and that Genesco would be deemed to be fully subrogated to any and all such rights, claims, or causes of action. *Id.*

### C. The Visa International Operating Regulations

The VIOR require all acquiring banks to comply, and ensure that their merchants comply, with CISP. *Id.* ¶ 7. The CISP requirements include, among others, the PCI DSS. *Id.* The PCI DSS include twelve overarching security Requirements, each of which is split into numerous security sub-requirements, for a total of over 200 individual security sub-requirements. *Id.* ¶ 8. The VIOR also provide that, in the event an acquiring bank fails to comply with the requirements of the CISP (such as failing to ensure that its merchant complies with the PCI DSS), the acquiring bank may be assessed a fine, to be determined in Visa's discretion, of up to $50,000 for a first violation, up to $100,000 for a second violation, and up to $200,000 for a third or any subsequent violation. *Id.* ¶ 9.

### D. The Non-Compliance Fines

By letters dated May 31, 2011, Visa notified Wells Fargo and Fifth Third that it had determined that each Acquiring Bank "was found to be non-compliant with the Cardholder Information Security Program (CISP), as required by Section ID# 010410-010410-0008031 of the *Visa International Operating Regulations (VIOR)*" in connection with the Intrusion. *Id.* ¶ 14. Visa's finding to this effect was based on Visa's conclusion that Wells Fargo and Fifth Third had had failed, as required by CISP, to ensure that Genesco was compliant with the PCI DSS at the time of the Intrusion. *Id.* In these letters, Visa also stated that each Acquiring Bank "has been assessed a fine of $5,000 related to the violation of Section ID# 010410-010410-0008031 of the

9

*VIOR*.  Penalties for the violation are detailed in Section ID# 010410-010410-0009032 of the *VIOR*."  *Id.* ¶ 15.

On June 15, 2011, Visa collected $5,000 from each of the Acquiring Banks in satisfaction of the Non-Compliance Fines, by withholding that amount from funds otherwise due to the Acquiring Banks with respect to transactions made at Genesco stores.  *Id.* ¶ 18.  Pursuant to the Reserve Agreement, Wells Fargo transferred $5,000 from the Genesco reserve account in satisfaction of Genesco's obligation to indemnify Wells Fargo for its Non-Compliance Fine, whereupon under the Reserve Agreement Genesco became assignee of and subrogated to Wells Fargo's right to recover its Non-Compliance Fine from Visa.  *Id.* ¶ 20.  Pursuant to the Fifth Third Agreement, Fifth Third withheld $5,000 from settlement funds otherwise due to Genesco in satisfaction of Genesco's obligation to indemnify Fifth Third for its Non-Compliance Fine, *id.* ¶ 19, whereupon under California law Genesco became equitably subrogated to Fifth Third's right to recover its Non-Compliance Fine from Visa.[2]

## ARGUMENT

The question at issue in this motion, "whether a [contractual] provision is an enforceable liquidated damages provision or an unenforceable penalty[,] is a question of law to be decided by

---

[2] Subrogation is the "substitution of one person in place of another with reference to a lawful claim, demand or right, so that he who is substituted succeeds to the rights of the other in relation to a debt or claim, and its rights, remedies, or securities."  73 Am. Jur. 2d *Subrogation* § 1.  Under California law, which governs the contract between Fifth Third and Visa, one becomes subrogated to the rights and claims of another by paying the debt of another.  *Caito v. United California Bank*, 20 Cal. 3d 694, 704 (1978) ("(1) Payment must have been made by the subrogee to protect his own interest. (2) The subrogee must not have acted as a volunteer. (3) The debt paid must be one for which the subrogee was not primarily liable. (4) The entire debt must have been paid. (5) Subrogation must not work any injustice to the rights of others.") (internal citations and quotation marks omitted).  The Non-Compliance Fines were imposed by Visa on Fifth Third based on Fifth Third's alleged violation of VIOR § 8031 and not directly upon Genesco.  *See* Harrington Aff., Ex. I at 1 ("All fines imposed by Visa are fines imposed on Clients.  A Client is responsible for paying all fines, and the Client must not represent to its customer that Visa imposes any fines on its customer.")  Pursuant to the Fifth Third Agreement, Genesco was legally obligated to indemnify Fifth Third for the amount of the Non-Compliance Fine, Rule 56.01 Statement ¶ 11.  Accordingly, because Genesco paid Fifth Third for the amount of the Non-Compliance Fine imposed on Fifth Third by Visa, *id.* ¶ 19, pursuant to a legal indemnity obligation, Genesco was not paying a debt as a primary obligor or as a volunteer and is therefore equitably subrogated to all rights of Fifth Third in relation to its claim against Visa for the wrongful imposition of the Non-Compliance Fine.

10

the Court." *Dollar Tree Stores Inc. v. Toyama Partners LLC, et al.*, 875 F. Supp. 2d 1058, 1071 (N.D. Cal. 2012) (citing *Harbor Island Holdings v. Kim*, 132 Cal. Rptr. 2d 406 (Ct. App. 2003)). As written, VIOR § 9032, pursuant to which Visa imposed and collected the Non-Compliance Fines based on the Acquiring Banks' alleged breach of VIOR § 8031 by failing to ensure Genesco's compliance with the PCI DSS, does not constitute an enforceable liquidated damages provision under California law but is rather an unenforceable contractual penalty. Because the VIOR did not validly authorize withholding the $5,000 from each of Wells Fargo and Fifth Third, Visa therefore acted in breach of its contracts with the Acquiring Banks in collecting the Non-Compliance Fines from them. Genesco, as assignee of and/or subrogee to the Acquiring Banks' right to obtain recovery of the Non-Compliance Fines from Visa for breach of its contracts with each of them, is thus entitled to the relief sought by its First Cause of Action. Alternatively, because the Non-Compliance Fines were unenforceable penalties, Genesco is entitled to have them be reimbursed under its Sixth and Seventh Causes of Action. *Genesco v. Visa*, 2013 WL 3790647, at *23. In sum, "there is no genuine dispute as to any material fact and [Genesco] is entitled to judgment as a matter of law" on its First Cause of Action or, alternatively and insofar as they relate to the Non-Compliance Fines, on its Sixth and Seventh Causes of Action. Fed. R. Civ. P. 56(a).

## I.     NORMAL PRINCIPLES OF CONTRACT INTERPRETATION APPLY TO THE VIOR

A financial institution that wants to offer its customers (whether merchants or cardholders) the ability to conduct transactions with Visa-branded payment cards must enter into a contract with Visa that allows that financial institution to participate in Visa's electronic payment system as a Visa "Member." Rule 56.01 Statement ¶ 6. Each such contract between Visa and its Members is subject to the VIOR. *Id.* Moreover, the VIOR explicitly disclaim any

11

third-party beneficiary rights, *see* VIOR ID#: 081010-010410-0020308 (included in Harrington Aff., Ex. A) ("[t]he Operating Regulations do not constitute a third-party beneficiary contract as to any entity or person, nor do they constitute a contract, promise or representation, or confer any rights, privileges, or claims of any kind as to any third parties"), and courts have repeatedly held that Visa Members are not entitled to assert a claim for breach of contract against other Visa Members based on alleged violations of the VIOR. *See, e.g.*, *In re TJX Cos. Retail Sec. Breach Litig.*, 564 F.3d 489, 499 (1st Cir. 2009); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Privacy Litig.*, MDL No. 2046, 2011 WL 1232352, at *17-18 (S.D. Tex. Mar. 31, 2011); *id.,* MDL No. 09-2046, 2012 WL 896256, at *4-8 (Mar. 14, 2012). Accordingly, although styled as "regulations" governing the participants in the Visa system, legally, the VIOR are simply part of each separate contract between Visa, on the one hand, and each of the Visa Members, on the other.

Being part of each contract between Visa and its Members, the VIOR are subject to normal principles of contract interpretation under California law. Under California law, "the language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." Cal. Civ. Code § 1638. However, if the language of a contract is uncertain, "the language of the contract should be interpreted most strongly against the party who caused the uncertainty to exist." *Id.* § 1654. The VIOR are drafted solely by Visa and published to Members on a "take-it-or-leave-it" basis as any Member must comply with the VIOR therein in order "to operate and participate in Visa's payment services." Rule 56.01 Statement ¶ 6; *see also* VIOR ID#: 081010-010410-0020308; VIOR ID#: 010410-010410-0020309 (included in Harrington Aff. Ex. A). Here, then, the Court should enforce the VIOR as

12

written where its terms are clear, and should construe those terms against Visa, and in favor of Genesco and the Acquiring Banks, where they are unclear.

## II. BECAUSE VIOR § 9032 IS NOT A VALID LIQUIDATED DAMAGES PROVISION UNDER CALIFORNIA LAW, THE NON-COMPLIANCE FINES WERE NOT VALIDLY IMPOSED AS LIQUIDATED DAMAGES FOR THE ACQUIRING BANKS' ALLEGED CISP VIOLATIONS AND HENCE CONSTITUTED UNLAWFUL PENALTIES BY REASON OF SUCH ALLEGED VIOLATIONS

Under California law, a contract provision "liquidating the damages" to be recovered by one party if the other party breaches the contract is valid "unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made." Cal. Civ. Code § 1671(b). A liquidated damages clause is "unreasonable" within the meaning of Section 1671(b) "if it bears no reasonable relationship to the range of actual damages that the parties could have anticipated would flow from a breach." *Ridgley*, 953 P.2d at 488 (citing Cal. Civ. Code § 1671(b)). "In the absence of such relationship, a contractual clause purporting to predetermine damages *must* be construed as a penalty," and therefore unenforceable. *Id.* (emphasis added, internal quotation marks omitted).

Here, then, in order for the Non-Compliance Fines to constitute validly imposed liquidated damages for the Acquiring Banks' alleged violation of their contractual obligation to ensure Genesco's PCI DSS compliance, VIOR § 9032 must (1) "liquidat[e] the damages" to be recovered by Visa if the Acquiring Banks breach that obligation and (2) do so in a way that bears a reasonable relationship to the range of actual damages that Visa and the Acquiring Banks could have anticipated would flow from such a breach. It is indisputable that VIOR § 9032 does *neither* of these two things. First, because VIOR § 9032 does not settle in advance by agreement the damages to be recovered by Visa if an acquiring bank fails to ensure the PCI DSS compliance of one of its merchants, it does not "liquidat[e]" those damages as required by Cal.

13

Civ. Code § 1671(b).  See Part II.A below.  Second, by the very terms of VIOR § 9032, the amounts imposable by Visa thereunder bear no relationship whatever to the range of actual damages that Visa and its Members could have anticipated would flow from an acquiring bank's failure to ensure the PCI DSS compliance of one of its merchants.  See Part II.B below.

> **A.**    **VIOR § 9032 Does Not "Liquidate" Damages for Breach of VIOR § 8031, as Required by Cal. Civ. Code § 1671(b), Because Instead of Settling the Amount of Such Damages in Advance by Agreement, It Leaves the Damage Amount Imposed Under VIOR § 9032 to Visa's Unfettered, After-the-Fact Discretion, and Because It Leaves Open the Possibility of Additional Liability Being Imposed by Reason of the Breach.**

For two reasons, the fines purportedly authorized by VIOR § 9032 do not "liquidat[e]" the damages for an acquiring bank's breach of its VIOR § 8031 obligation to ensure its merchants' CISP compliance, as Cal. Civ. Code § 1671(b) expressly requires for VIOR § 9032 to be a valid liquidated damages provision.

<u>First</u>, VIOR § 9032 leaves the amounts of the fines imposed thereunder to the unfettered, after-the-fact discretion of Visa.  Specifically, although VIOR § 9032 contains a schedule of fines for a Member's violations of the CISP, these amounts are only maximums that may be assessed depending on whether the Member is a first-, second-, or third-time CISP violator.  *See* VIOR § 9032 (included in Harrington Aff., Ex. A) (imposing maximum fines of up to $50,000 for a first violation, up to $100,000 for a second violation, and up to $200,000 for any subsequent violation).  Moreover, the section does not in any way guide or control Visa in computing an amount within the given range, and rather than stipulating that amount in advance, it calls for the determination of the amount to be made *after* the breach occurs.  *Id*.

These wholly indeterminate provisions plainly do not, within the meaning of Cal. Civ. Code § 1671(b), "liquidat[e]" Visa's damages for a CISP violation.  By definition, a "liquidated" damages provision is one that "*determines in advance* the *measure of damages* if a party

14

breaches the agreement." BLACK'S LAW DICTIONARY 942 (7th ed. 1999) (definition of "liquidated damages clause") (emphasis added).[3] Consistent with this hornbook definition, California case law provides expressly that for a contractual provision to be one for "liquidated" damages, the provision must establish a damage amount that is *fixed and certain* by *advance agreement*. *Chodos v. West Publ'g Co.*, 292 F.3d 992, 1002 (9th Cir. 2002) (the purpose of a valid liquidated damages provision is to establish "an amount of compensation to be paid in the event of a breach of contract, the sum of which is *fixed and certain by agreement*") (emphasis added; internal quotation marks omitted); *El Centro Mall, LLC v. Payless ShoeSource, Inc.*, 94 Cal. Rptr. 3d 43, 47 (Ct. App. 2009) (objective of valid liquidated damages clause is to "*stipulate a pre-estimate of damages* in order that the contracting parties may know with reasonable certainty the extent of liability in the event of breach") (emphasis added; internal quotation marks omitted). The damages amounts imposable under VIOR § 9032 are not fixed and certain; nor are they determined by advance agreement. To the contrary, VIOR § 9032 fines can be anywhere from $0 to $200,000 per violation, with the specific amount of any particular VIOR § 9032 fine not being fixed and certain according to the parties' advance agreement, but rather left to be determined by Visa's sole and unlimited exercise of its discretion at some point in the future, after a supposed violation of VIOR § 8031 has occurred. In sum, VIOR § 9032 manifestly does not "determine in advance" the "measure of damages" for a CISP violation, and

---

[3] *See also* 22 AM. JUR. 2D *Damages* § 489 ("Liquidated damages are the sum which a party to a contract agrees to pay if he or she fails to perform and which, having been arrived at by good-faith effort to estimate actual damages that will probably ensue from breach, is recoverable as agreed-upon damages should breach occur. They are also defined as damages the amount of which has been ascertained by judgment or by the specific agreement of the parties or which are susceptible of being made certain by mathematical calculation from known factors. The term applies when a specific sum of money has been expressly stipulated by the parties to a contract as the amount of damages to be recovered by either party for a breach of the contract by the other. The sum must be stipulated and agreed upon by the parties at the time they enter their contract, and such clauses are permissible where they are neither unconscionable nor contrary to public policy.")

as a result it manifestly is not a provision "liquidating" those damages within the meaning of Cal. Civ. Code § 1671(b).

Second, VIOR § 9032 does not operate to "liquidate" Visa's damages for breach of VIOR § 8031, within the meaning of Cal. Civ. Code § 1671(b), for the further reason that it does not *extinguish* any damages claim that Visa might otherwise have against the Visa Member in question by reason of the CISP violation in question. By definition, "liquidating" an amount of damages or indebtedness means "settling" that amount by agreement or legal process. WEBSTER'S II NEW COLLEGE DICTIONARY 655 (3d ed. 2005) ("1a. To pay off or settle (e.g., a debt or claim)" and "To terminate: abolish"). Accordingly, as a matter of California law, a contractually required payment that does not, in fact, extinguish a party's damages liability for the breach of contract to which it relates is not a payment of "liquidated" damages; it is, instead, a payment of a penalty. *See Harbor Island*, 132 Cal. Rptr. 2d at 409-410 (imposition of double-rent in event of lease default was illegal penalty in part because other provisions of the lease afforded landlord remedies for the breach); *Paramount Farms, Inc. v. Ventilex B.V.*, 735 F. Supp. 2d 1189, 1221-22 (E.D. Cal. 2010) (rejecting plaintiff's liquidated damages claim because plaintiff's attempted recovery of both actual and liquidated damages was "an impermissible double recovery"); *El Centro Mall*, 94 Cal. Rptr. 3d at 47-48 (liquidated damages provision was invalid as a contractual penalty to the extent it duplicated another liquidated damages provision, since the additional provision would be "unnecessary[] except to penalize" the defendant tenant); *Guthrie v. Am. Protection Indus.*, 206 Cal. Rptr. 834, 835-36 (Ct. App. 1984) (holding that liquidated damages as specified in contract were plaintiff's exclusive damages remedy).

Visa does not—and cannot—claim that imposition of a fine on a Member under VIOR § 9032 extinguishes a Member's liability for the CISP violation on which the fine is based. *See*

16

VIOR ID#: 010410-010410-0007280 (included in Harrington Aff., Ex. A) (noting that "[t]hese procedures and fines are in addition to enforcement rights available to Visa under other provisions of the *Visa International Operating Regulations*, the applicable Certificate of Incorporation, or through other legal or administrative procedures").  For example, under the VIOR, a Member's liability exposure for a CISP violation involving alleged PCI DSS non-compliance by one of its merchants extends not just to a fine under VIOR § 9032, but also to Visa's investigation costs[4] and to issuer reimbursement assessments pursuant to the Account Data Compromise Recovery and Data Compromise Recovery Solution programs.[5]  Thus, in this very case, the letters by which Visa imposed the Non-Compliance Fines expressly reserved Visa's right to seek to impose *additional* liability on the Acquiring Banks by reason of the alleged PCI DSS violations on which the Non-Compliance Fines were based. Rule 56.01 Statement ¶ 17.  Visa thereafter imposed over $13 million in issuer reimbursement assessments on the Acquiring Banks based on those very same PCI DSS violations.  *Id.* ¶¶ 22-25.  In short, because by Visa's own admission the Non-Compliance Fines did not extinguish the Acquiring Banks' contractual liability to Visa for the alleged contract breaches on which the Non-Compliance Fines were based, the Non-Compliance Fines did not in any way, shape, or form

---

[4] *See* VIOR ID#: 010410-010410-0007366 (included in Harrington Aff., Ex. A) ("Visa may investigate allegations of violations of the *Visa International Operating Regulations*.  Visa may make such investigations as it deems appropriate and assess all investigative costs to the Member in addition to any fine that may be applicable").

[5] *See, e.g.*, VIOR ID#: 081010-010410-0000877 (included in Harrington Aff., Ex. A) ("In the U.S. Region, the Account Data Compromise Recovery (ADCR) process allows Visa to determine the monetary scope of an account compromise event, collect from the responsible Member, and reimburse Members that have incurred losses as a result of the event. . . . This process is only available when there has been a violation of at least one of the following: . . . Operating Regulations involving non-compliance with the Payment Card Industry Data Security Standard (PCI DSS) that could allow a compromise of the full contents of any track on the magnetic stripe"); VIOR ID#: 010410-010410-0003334 (included in Harrington Aff., Ex. A) ("An Issuer of Visa International or Visa Europe may recover incremental counterfeit fraud losses resulting from a Data Compromise event involving theft of full Magnetic-Stripe Data under the Data Compromise Recovery solution from Member(s) to whom liability for such loss has been assigned pursuant to the Data Compromise Recovery solution.")

"liquidate" Visa's damages for those breaches, as required in order for them to be valid liquidated damages under California law.

**B.    VIOR § 9032 Is "Unreasonable" Within the Meaning of Cal. Civ. Code § 1671(b) Because the Amounts Imposable by Visa Thereunder Bear No Relationship to the Range of Actual Damages that Visa and the Acquiring Banks Could Have Anticipated Would Flow from an Acquiring Bank's Failure to Ensure the PCI DSS Compliance of One of its Merchants.**

Even if VIOR § 9032 were a contractual provision "liquidating" (within the meaning of Cal. Civ. Code § 1671(b)) the damages to Visa for a Member's failure to comply with CISP under VIOR § 8031, which it manifestly is not as shown in Part II.A above, in order to be valid under California law VIOR § 9032 would also have to liquidate those damages in a manner that bears a reasonable relationship to the range of actual damages that Visa and the Acquiring Banks could have anticipated would flow from such a breach. *See* Cal. Civ. Code § 1671(b); *Ridgley*, 953 P.2d at 488 (citing Cal. Civ. Code § 1671(b)). Under California law, the reasonableness of a liquidated damages provision is evaluated according to "the circumstances existing at the time the contract was made." Cal. Civ. Code § 1671(b). Accordingly, a court evaluates "the terms of the contract as written," such that a party cannot enforce an unreasonable liquidated damages provision even if it attempts to apply the provision in a reasonable manner. *Atel Financial Corp. v. Quaker Coal Co.*, 132 F. Supp. 2d 1233, 1243 (N.D. Cal. 2001) (stipulated remedy provision was illegal penalty because it entitled aggrieved party to unreasonably high recovery, notwithstanding aggrieved party's attempt to recover less than it was entitled to under the contract) (internal quotation marks omitted), *aff'd on other grounds*, 321 F.3d 924 (9th Cir. 2003).

Where the primary purpose of a liquidated damages provision is to compel performance by imposing the charge in question, the "reasonable relationship" required to validate the provision is necessarily lacking. *See Garrett v. Coast & S. Fed. Sav. & Loan Ass'n*, 9 Cal. 3d

731, 739-40 (1970) ("A penalty provision operates to compel performance of an act and usually becomes effective only in the event of default upon which a forfeiture is compelled without regard to the actual damages sustained by the party aggrieved by the breach.") (citations omitted).[6] Moreover, the requisite "reasonable relationship" can also be shown to be absent by establishing either a "lack of proportional relation" between the amount of the liquidated damages and the damages that may actually flow from a breach, or that the liquidated damages amount does not represent "the result of a reasonable endeavor by the parties to estimate a fair average compensation for any loss that may be sustained" by the non-breaching party. *Ridgley*, 953 P.2d at 488 (internal quotation marks omitted). "In the absence of such a relationship, a contractual clause purporting to predetermine damages *must* be construed as a penalty," and therefore found unenforceable. *Id.* (emphasis added, internal quotation marks omitted).

Applying these principles of California law to the indisputable facts present here, VIOR § 9032 is plainly "unreasonable" within the meaning of, and hence unenforceable under, Cal. Civ. Code § 1671(b). To begin with, it is indisputable that the primary purpose of VIOR § 9032 is to *penalize* violations of CISP, which in and of itself suffices to invalidate VIOR § 9032 under the rule laid down in *Garrett*. By its own express terms, VIOR § 9032 describes the amounts imposed thereunder as "penalties" for CISP violations. *See* VIOR § 9032 (entitled "Cardholder Information Security Program Penalties – U.S. Region") (included in Harrington Aff., Ex. A). Moreover, in this very case Visa itself referred to the Non-Compliance Fines as "*Penalties* for the violation" in the Fine Letters sent to Wells Fargo and Fifth Third. Rule 56.01 Statement ¶ 15 (emphasis added). To be sure, a party's own characterization of a purported liquidated damages clause, while entitled to weight in deciding whether it is an illegal penalty, is not necessarily

---

[6] Although *Garrett* pre-dates the 1977 amendment to Cal. Civ. Code § 1671, California courts have cited and followed its analysis in post-1977 decisions. *See, e.g.*, *Ridgley*, 953 P.2d at 491 n.5.

conclusive.  *See Los Angeles City Sch. Dist. v. Landier Mgmt. Co.*, 2 Cal. Rptr. 662, 667 (Ct. App. 1960).  But here, Visa can point to nothing in the VIOR to suggest that VIOR § 9032 is intended for any purpose other than to "penalize" Visa Members for violating CISP.  Indeed, given that VIOR § 9032 makes no reference whatever to Visa's potential actual damages from violations of CISP, and that it instead makes the amounts imposable thereunder a function of whether the Member has previously violated CISP (*see* VIOR § 9032's provisions increasing the maximum fine amounts for second and third violations), VIOR § 9032 inarguably would be primarily intended as a penalty provision even if Visa had not separately labeled it as such in VIOR § 9032 itself and had not expressly described it as such in this very case.[7]  That being the case, under *Garrett*, VIOR § 9032 is, as a matter of law, unenforceable under Cal. Civ. Code § 1671(b).

In addition to being unenforceable under *Garrett*, VIOR § 9032 is, for two separate reasons, unenforceable under *Ridgley*.  First, the fines imposable under VIOR § 9032 not only "lack a proportional relationship," they in fact have no relationship whatever, to any actual damages that may result to Visa from a breach of an acquiring bank's VIOR § 8031 obligation to ensure its merchants' CISP compliance.  As noted above, under the express terms of VIOR § 9032, the only circumstance that constrains the amount of any fine imposed thereunder is

---

[7] Other provisions of the VIOR confirm that the VIOR's "penalty" provisions are intended (as the provisions themselves state) to penalize Visa Members for having committed the violations in question, not to compensate Visa for its actual damages by reason of such violations.  For example, the VIOR purport to impose additional and increasing fines for "repetitive" or "continuing" violations of the VIOR if a VIOR violation is not corrected by a date set by Visa.  *See* VIOR ID#: 010410-010410-0003645 (included in Harrington Aff., Ex. A) ("Repetitive violations of the *Visa International Operating Regulations* incur heavier fines or other actions.  A violation of any section qualifies as a repetitive violation only if the violating member does not correct it by the date specified in the Notification."); Rule 56.01 Statement ¶ 16 ("If Genesco does not demonstrate PCI DSS compliance by June 30, 2011, [Wells Fargo/Fifth Third] will be assessed a monthly non-compliance fine of $5,000.  Visa has the right to escalate fines in the event of continued non-compliance.").  Such features, on their face, make it perfectly obvious that the VIOR's penalty provisions such as VIOR § 9032 have nothing whatever to do with compensating Visa for its anticipated damages from a Member's failure to comply with the VIOR and the PCI DSS, but rather are purely intended to punish a Member's past violation of, and/or to coerce a Member's future observance of, the VIOR.

whether, and how often, the Member in question has previously violated CISP.  The actual

damages that might or could be suffered by Visa by reason of a CISP violation are never even

mentioned in VIOR § 9032, much less assigned some role to the calculation of the fine amount

imposable thereunder.[8]  Because, as written, VIOR § 9032 imposes fine amounts that have no

relationship whatever, much less the "proportional relationship" required under *Ridgley*, to any

actual damages Visa might incur from an acquiring bank's VIOR § 8031 obligation to ensure its

merchants' CISP compliance, the Non-Compliance Fines, along with any other fines imposed

under VIOR § 9032, are unenforceable penalties.  *See Ridgley*, 953 P.2d at 490 (provision was

illegal penalty because it was purely "intended as an incentive" for compliance with the contract

and "logically unrelated" to compensation of the party).[9]

Second, VIOR § 9032 is unenforceable under *Ridgley* for the additional reason that the

fines imposable under VIOR § 9032 indisputably do not represent "the result of a reasonable

endeavor by the parties to estimate a fair average compensation for any loss that may be

sustained" by the non-breaching party.  *Ridgley*, 953 P.2d at 488 (internal quotation marks

omitted).  Even if it could be said that VIOR § 9032 was negotiated by "the parties" and not

---

[8] As one article has noted, the fines are "just like the fines associated with a traffic ticket, e.g., the greater the number of times a motorist is caught using a 'high occupancy' lane while driving solo, the higher the fine." W. Stephen Cannon & Michael McCormack, *"The Currency of Progress?" Visa and MasterCard Arrogate Governmental Powers in the Name of Card System Security*, The Hospitality Lawyer (Dec. 2009), *available at* http://www.constantinecannon.com/pdf_etc/Payment-Security-Article-10.pdf.

[9] Faced with a similar purported liquidated damages provision that imposed a liability amount for breaches without regard to the non-breaching party's actual damages resulting from the breach, the court in *Dollar Tree Stores* held that the provision was unenforceable.  875 F. Supp. 2d at 1073.  In *Dollar Tree Stores*, a tenant attempted to recover on a provision establishing a $2,500 "charge" for each day that the landlord failed to satisfy all nine conditions for the tenant's new store location.  The provision imposed the same $2,500 daily charge whether the landlord had failed to meet one or all of the conditions or any sub-part thereof, and would continue in perpetuity until the breach had been remedied to the satisfaction of the tenant.  The Court held that the provision was unenforceable and bore no rational relationship to the actual damages that could flow from a breach "because it imposed the same $2,500 penalty for at least nine different types of breach of varying degrees of magnitude, and because it imposes that penalty indefinitely until [the landlord] satisfies all of the Delivery Conditions."  *Id.*  Because VIOR § 9032, like the provision invalidated in *Dollar Tree Stores*, imposes breach liability without any regard to the impact of such breach on the non-breaching party, VIOR § 9032 is likewise an unenforceable penalty provision.

unilaterally imposed by Visa, which it cannot (*see* Rule 56.01 Statement ¶ 6), there is nothing in VIOR § 9032 to suggest that it reflects an effort "to estimate a fair average compensation for any loss that may be sustained" by Visa from a Member's CISP violation. *Ridgley*, 953 P.2d at 488 (internal quotation marks omitted). To the contrary, as shown above, the terms of VIOR § 9032 and the VIOR's other penalty provisions make perfectly clear that such provisions have nothing whatever to do with Visa's actual damages from the VIOR violations to which such provisions relate, but rather constitute a transparent attempt by Visa to coerce compliance with the VIOR through its unilateral imposition of a penalty regime. Finally, the specific fine amounts actually imposed under VIOR § 9032 are determined not by VIOR § 9032, but rather by Visa itself, acting unilaterally. Thus, even if it might be said that VIOR § 9032 was determined by "the parties" as required by *Ridgley*, the Non-Compliance Fines and any other fines actually imposed under VIOR § 9032 indisputably are determined solely by Visa and hence cannot pass muster under *Ridgley*.

## CONCLUSION

For all of the reasons outlined above, summary judgment should be entered in favor of Genesco on its First Cause of Action or, alternatively, partial summary judgment should be entered in favor of Genesco on its Sixth and Seventh Causes of Action, insofar as those counts relate to the Non-Compliance Fines.

Respectfully submitted,

Dated: August 23, 2013

By:  /s/ Overton Thompson III
Overton Thompson III (BPR 011163)
(othompson@bassberry.com)
Wendee M. Hilderbrand (BPR 023688)
(whilderbrand@bassberry.com)
BASS, BERRY & SIMS PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
(615) 742-7730 (telephone)
(615) 742-2804 (facsimile)

Douglas H. Meal (admitted *pro hac vice*)
Seth C. Harrington (admitted *pro hac vice*)
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, Massachusetts 02199-3600
(617) 951-7000

*Attorneys for Plaintiff Genesco, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, via the Court's electronic

filing system, on the following:

> Gayle I. Malone, Jr.
> John M. Tipps
> Emily B. Warth
> Walker, Tipps & Malone PLC
> 2300 One Nashville Place
> 150 Fourth Avenue North
> Nashville, TN 37219
>
> Randall W. Edwards
> Aaron M. Rofkahr
> O'Melveny & Myers LLP
> Two Embarcadero Center, 28th Floor
> San Francisco, CA 94111
>
> Robert L. Stolebarger
> Andres L. Carrillo
> Bryan Cave LLP
> 560 Mission Street, 25th Floor
> San Francisco, CA 94105

This 23d day of August, 2013.

/s/ Overton Thompson III