UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| GENESCO INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 3:13-cv-00202 |
| v. | ) | Judge William J. Haynes |
| | ) | |
| VISA U.S.A. INC., VISA, INC., and | ) | JURY DEMAND |
| VISA INTERNATIONAL SERVICE | ) | |
| ASSOCIATION, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PLAINTIFF TO COMPLY WITH THE COURT'S PRIOR ORDERS CONCERNING DISCOVERY OF REMEDIATION MEASURES AND FOR SANCTIONS AND AN EXPEDITED HEARING**

Plaintiff Genesco Inc. ("Genesco") respectfully submits this Opposition to Defendants' Motion to Compel Plaintiff to Comply with the Court's Prior Orders Concerning Discovery of Remediation Measures and for Sanctions and an Expedited Hearing (Dkt. #359) (the "Motion").

To paraphrase Senator Howard Baker, the question in this case is what did Visa know about Genesco's alleged non-compliance with PCI DSS and when did they know it. With regard to the first part of this question, Visa has acknowledged that the sole basis for its decision to impose $13 million in fines and assessments on Genesco was the four PCI DSS requirements Trustwave concluded on page 37 of the Trustwave Report were not in place at the time of the Intrusion. *See* Transcript of Deposition of Joseph Asaro, at 241:2-242:8, attached to the Affidavit of Seth Harrington ("Harrington Aff.") as Exhibit 1. As for when did they know it, this Court has made clear that Visa can only base its defense in this case on what it knew *at the time of its decision to impose the fines and assessments*. Amended Memorandum at 36 (Dkt. # 338-1)

("Given Visa's own standard for fines and reimbursements, *prior to* any fine or assessment, Visa had to have proof of a VIOR violation." (emphasis added).)

Despite this clear factual and temporal limitation on what could possibly have any relevance to Visa's decision to impose fines and assessments on Genesco – and in tacit recognition that it can not defend its decision to impose fines and assessments on what is actually on page 37 of the Trustwave Report – Visa has focused its discovery requests in this case on Genesco's compliance with PCI DSS requirements *unrelated* to the four at issue, and on Genesco's computer system security generally, in particular any enhancements Genesco made to its computer network security in the *years* after the Intrusion. Visa's attempts to broaden discovery in this fashion run completely counter to this Court's holding that "discovery should be limited to Genesco's alleged violations of Visa's VIOR, CISP and PCI-DSS computer system requirements as found by Trustwave, for which Visa imposed its assessments and fines." Amended Memorandum at 37 (Dkt. # 338-1).

Visa's latest motion to compel must be viewed against this background, for despite all the hyperbole and scurrilous accusations that Genesco has something to hide, what Visa is really trying to do is create a strawman to deflect attention from its inability to justify its decision to impose the fines and assessments on the record before Visa at the time it acted to impose such fines and assessments. Specifically, the Motion concerns Genesco's efforts to comply with the Court's March 31, 2014 Order (Dkt. # 346) (the "March 31 Order") regarding the remedial measures set out in the Trustwave Report on pages 32 and 33 and Sections 6.1 and 6.2 and what Genesco did in response to the Trustwave inquiry that was necessary to comply with its contractual obligations to the banks (Wells Fargo and Fifth Third) (the "Remedial Measures"). Contrary to the Motion's mischaracterizations of the record, Genesco has fully complied with

2

this Court's directive to produce a Rule 30(b)(6) designee to testify fully and completely regarding the Remedial Measures; to review, and if necessary, supplement its prior discovery responses concerning the Remedial Measures; and to produce Genesco employee Randy Lamke for a deposition.

Now, just days before the conclusion of the extended fact discovery period ordered by the Court, Visa has filed the Motion, without any face-to-face dispute conference, in an effort to poison the well against Genesco by means of a discovery motion directed at a collateral issue. As detailed below, the Motion is baseless, as Genesco has provided Visa with full and complete discovery in response to its requests regarding the Remedial Measures.

## BACKGROUND

On February 7, 2014, Visa filed its Motion (1) to Compel Compliance with Court's Memorandum and Order; (2) for Clarification of the Court's Memorandum and Order; and (3) for a Discovery Conference (Dkt. # 299) (the "Feb. 7 Motion"), which sought, *inter alia*, to compel Genesco to supplement its written discovery responses regarding remediation, to resume Genesco's Rule 30(b)(6) deposition, and to resume the depositions of certain Genesco employees. Following a hearing on March 10, 2014, the Court granted in part and denied in part the Feb. 7 Motion and instructed counsel for the parties to submit an agreed order reflecting the Court's rulings. Order dated March 11, 2014 (Dkt. # 339). The parties were unable to agree on the order, however, so they submitted competing proposed orders along with respective statements of position. *See* Notice of Filing (Dkt. # 342); Notice of Filing (Dkt. # 343). Specifically, Visa sought an order that would allow discovery of not only remediation set out in the Trustwave Report and actions taken in response to the Trustwave inquiry but also *any* security enhancement action taken during the seven months following the Intrusion to comply

with Genesco's contractual obligations to the Acquiring Banks, *regardless of whether that action was taken in response to the Trustwave inquiry*. *See* Notice of Filing (Dkt. # 342) at 4. Genesco objected to this latter aspect of Visa's proposed order, on the basis that it would authorize a fishing expedition into purported PCI DSS violations *not* found by Trustwave, and *not* relied upon by Visa in issuing the assessments, by allowing Visa to seek discovery of *all* Genesco's post-Intrusion information security enhancements, even if such enhancements had nothing whatsoever to do with the alleged deficiencies identified in the Trustwave Report and, accordingly, had nothing whatsoever to do with the Visa assessments. *See* Notice of Filing (Dkt. # 343) at 3-4.

In the March 31 Order, the Court *agreed* with Genesco's position on this point. Specifically, as entered by the Court, the March 31 Order limited the scope of appropriate discovery to the "remedial measures set out in the Trustwave Report both on pages 32 and 33 and Sections 6.1 and 6.2 and what Genesco did in response to the Trustwave inquiry that was necessary to comply with its contractual obligations to the banks (Wells Fargo and Fifth Third)." March 31 Order at 2. Accordingly, contrary to Visa's argument in support of the Motion, the Remedial Measures *do not* include each and every enhancement (much less every "change") that was made at any point following the Intrusion to any aspect of the information security measures protecting Genesco's computer network. Rather, under the March 31 Order, the Remedial Measures include only those post-Intrusion remediation efforts (i) set forth in Sections 6.1 and 6.2 of the Trustwave Report or (ii) taken in response the Trustwave inquiry that were necessary to comply with Genesco's contractual obligations to the Acquiring Banks.

4

Moreover, again contrary to Visa's assertions in support of the Motion, Genesco has in fact provided every bit of the supplemental discovery regarding the Remedial Measures called for by the March 31 Order.

- On January 31, 2014, Genesco confirmed to Visa that it had not objected to any of Visa's requests for production, and accordingly did not withhold from its production any responsive, non-privileged documents, based on Federal Rule of Evidence 407. On April 14, 2014, Genesco reconfirmed that it had produced all non-privileged responsive documents regarding the Remedial Measures that it had located by means of the searches that Genesco had agreed to undertake in response to Visa's requests for production. Thus, as demonstrated by Exhibits 2 and 3 to the Harrington Aff., Genesco has produced hundreds of pages of documents regarding post-Intrusion enhancements to its computer network information security measures. At no point between January 31, 2014 and the filing of the Motion on May 14, 2014 did Visa seek a face-to-face dispute conference with Genesco regarding its document production regarding the Remedial Measures.

- On April 16, 2014, Genesco produced to Visa its amended Responses to Visa's Interrogatory Nos. 13, 20, 28 and 31 and Request for Admission No. 30. In its responses, Genesco provided complete responses to those discovery requests insofar as they sought information regarding the Remedial Measures, including complete information (i) regarding the remedial measures that Genesco took as set forth in Section 6.2 of the Trustwave Report, (ii) as to whether Genesco implemented the recommendations in response to Section 6.1 of the Trustwave Report, and (iii) as to any other remediation efforts taken in response to the Trustwave inquiry that were necessary to comply with its contractual obligations to the Acquiring Banks. At no point between April 16, 2014 and the filing of the Motion on May 14, 2014 did Visa seek a face-to-face conference with Genesco regarding its supplemental responses to Visa's interrogatories and requests for admission regarding the Remedial Measures.

- On April 30, 2014, Visa took the deposition of Genesco employee Randy Lamke, which lasted approximately five hours. Genesco did not object to any question regarding any changes to Genesco's computer network after the Intrusion posed to Mr. Lamke on the basis that such changes were not set out in Sections 6.1 or 6.2 of the Trustwave Report or were not taken in response to the Trustwave inquiry. At no point between April 30, 2014 and the filing of the Motion on May 14, 2014 did Visa seek a face-to-face conference with Genesco regarding the deposition questions that were asked of Mr. Lamke regarding the Remedial Measures.

- On May 8, 2014, Visa resumed the Rule 30(b)(6) deposition of Genesco, which further testimony lasted approximately six hours and almost exclusively covered the Remedial Measures. Genesco's Rule 30(b)(6) designee, Mr. Jeffrey Orton, was prepared to testify, and did testify, regarding the remediation measures taken by Genesco as described in Sections 6.1 and 6.2 of the Trustwave Report as well as any other remedial measures undertaken by Genesco in response to the Trustwave inquiry. *See* Transcript of Jeffrey Orton, as Corporate 30(b)(6) for Genesco ("Orton Tr.") at 562:3-563:18, Harrington Aff.

5

> Ex. 4. At no point between May 8, 2014 and the filing of the Motion on May 14, 2014 did Visa seek a face-to-face conference with Genesco regarding the deposition of Genesco's Rule 30(b)(6) designee regarding the Remedial Measures.

Accordingly, and contrary to Visa's mischaracterization of Genesco's actions following the March 31 Order, Genesco has fully complied with the March 31 Order, and its actions are entirely consistent with the limitations set by the Court in the March 31 Order on the appropriate scope of discovery of Genesco's post-Intrusion information security enhancement measures.

In the Motion, Visa accuses Genesco of attempting to be the "gatekeeper" of discovery. That is simply not true. Genesco is merely attempting to comply with the March 31 Order, which appropriately limited the scope of discovery on Remedial Measures. To the extent Visa disagrees with Genesco's interpretation of the March 31 Order, Visa has made no attempt to resolve that disagreement through face-to-face discussions with Genesco, but instead filed yet another motion with the Court.

Visa apparently believes that the appropriate response to any discovery demand Visa might advance in this case is for Genesco to provide anything and everything Visa has asked for, regardless of the relevance of the material in question, the burden associated with complying with the demand, or any limitation that the Court has set on the scope of discovery. Both in the March 31 Order and in its Order dated January 17, 2014 on Visa's motion to compel and Genesco's motions for protective orders (Dkt. # 298), the Court set strict limits on the Remedial Measures discovery that Visa would be allowed to take in this action. By means of the Motion, however, Visa is in effect rearguing the Court's prior rulings by asking the Court to expand Genesco's discovery obligations to "*all* remedial measures" – whether or not set out in the Trustwave Report or taken in response to the Trustwave inquiry – and not just *the* Remedial Measures identified in the March 31 Order. In truth, the real party ignoring the Court's March 31 Order is Visa.

**I.  Genesco Has Fully Complied with the Court's March 31 Order Regarding Remedial Measures Document Discovery**

As detailed above, Genesco has provided all deposition testimony, fully answered all interrogatories, and fully responded to all requests for admission that sought discovery relative to the Remedial Measures, as called for by the March 31 Order.  In the Motion, Visa tacitly acknowledges this point, by challenging the Remedial Measures discovery provided by Genesco only on the ground that "Genesco has failed to produce *documents* related to even those few remediation measures it finally referenced in its April 16, 2014 supplemental responses." Motion at 7 (emphasis supplied).  Visa's contention is flat wrong.  As an example, Genesco has produced documents concerning measures Genesco took in response to the Trustwave inquiry, *see* Harrington Aff., Exhibit 2, as well as documents regarding enhancements to Genesco's computer system security after the Intrusion, *see* Harrington Aff., Exhibit 3.  These documents number in the hundreds of pages in the aggregate and reference the changes made in response to the Trustwave inquiry, changes made or considered in the months following the November 30 site visit by Trustwave, and changes implemented after IBM was retained to validate Genesco's PCI DSS compliance.  Prior to making this baseless accusation that Genesco had produced *nothing* in response to Visa's requests for documents relating to the Remedial Measures, Visa apparently undertook *no* effort to validate such claim, as the literally hundreds of pages of such documents produced by Genesco attest.

The substantial volume of Remedial Measures documents produced by Genesco also belies any argument Visa might make that Genesco has not made a rigorous enough search for such documents.  As Genesco has repeatedly confirmed to Visa, Genesco never objected to any of Visa's document requests based on Federal Rule of Evidence 407; Genesco conducted a reasonable search for documents sought by the Visa document requests it had not objected to,

including document requests directed towards Genesco's Intrusion-related information security enhancements; and Genesco produced all non-privileged responsive documents located by means of such search (and accordingly never withheld any remediation-related documents based on Federal Rule of Evidence 407). Moreover, Visa itself agreed months ago that, with the exception of Visa's request that Genesco conduct a broad ESI search for post-Intrusion documents responsive to Visa's requests (which request the Court denied[1]), Visa had no objection to the searches Genesco agreed to undertake in response to Visa's unobjected-to document requests (including those directed towards Genesco's Intrusion-related information security enhancements).[2] *See* Joint Statement at 2 (Dkt. # 139). Thus, while Visa may now be dissatisfied with the hundreds of pages of Remedial Measures documents that were located by means of the search Genesco undertook for remediation-related documents, the contours of Genesco's search for such documents was fully approved months ago either by Visa's own agreement or by order of the Court. Visa thus has no ground whatever for at this late date asking that Genesco be ordered to conduct some broader search for such documents.

## II.  Communications with Genesco Counsel For the Purpose of Obtaining Legal Advice Regarding Remediation Are Protected from Disclosure by the Attorney-Client Privilege

In the Motion, Visa contends that "[r]emediation measures recommended or suggested by non-lawyers and remediation measures performed by or on behalf of Genesco, are facts," and

---

[1] Visa's Motion to Compel (Dkt. # 120) sought, *inter alia*, an order requiring Genesco to conduct a voluminous ESI search for all documents generated after the Intrusion regarding Genesco's compliance with the PCI DSS and its computer system security generally. While the Court granted Visa's Motion to Compel to the limited extent of partially overruling the Rule 407 objection Genesco had raised to certain of Visa's interrogatories and requests for admission (but not to any of Visa's document requests), the Court denied Visa's Motion to Compel *in toto* insofar as it challenged the adequacy of Genesco's search for responsive documents. *See* Amended Memorandum at 39-40.

[2] Visa's Motion also refers to Request for Production No. 36, which was served on February 7, 2014. However, Genesco objected to this request on the basis that it was duplicative of prior requests, a point confirmed by Visa during the March 10 hearing, *see* Hearing Tr. at 22:2-6, and as set forth in note 1 above Genesco has already produced the non-privileged responsive documents it located in response to those prior requests. *See* Exhibit B to the Affidavit of Randall W. Edwards ("Edwards Aff.") (Dkt. # 360) at 5-6.

argues that Genesco therefore may not withhold communications with Genesco's in-house counsel or outside counsel for the purpose of obtaining legal advice if the subject of that legal advice was remediation measures. Motion at 9. In support of its position, Visa cites this Court's statement that "documents prepared in its ordinary business, as reflected by the Court's ruling that remedial measures that Genesco took in response to Trustwave's report must be produced because the Trustwave report reflects that those measures were undertaken in the ordinary course of business, not for Genesco's counsel." *See* Amended Memorandum at 48-49 (Dkt. # 338-1). But Genesco is not asserting that documents prepared in the ordinary course of business are protected from disclosure by the attorney-client privilege. To the contrary, Genesco is contending simply that any and all communications with Genesco's counsel reflecting the "fact" of remediation or otherwise relating to possible enhancements to Genesco's computer network security were prepared for the purpose of seeking advice as to Genesco's *legal* obligations regarding information security (such as those imposed by the PCI DSS) and hence are fully protected by the attorney-client privilege.[3] Genesco's position in this regard is entirely consistent with the Court's prior rulings on Genesco's claim of privilege, *see* Amended Memorandum at 42-48, and Visa should not be permitted to reopen this issue.

---

[3] Visa's Motion also includes the assertion that Genesco is contending that remediation performed after January 27, 2011 is "irrelevant." Again, Visa mischaracterizes Genesco's position. Visa points to a statement by the Rule 30(b)(6) designee that, other than the rebuilding of the credit switches, it was his understanding that Genesco did not undertake any remedial measures in response to the Trustwave inquiry after the issuance of the Trustwave Report on January 27, 2011. *See* Orton Tr. at 739:22-740:8. This testimony should come as no surprise to Visa, as it is the same position that Genesco asserted in March 7, 2011 when it provided Visa with its annotation of the Trustwave Report's Section 6.1 regarding the recommended/validation steps. Visa cannot now claim that Genesco is trying to hide the ball.

9

**III. IBM Is Properly Withholding the PCI Gap Analysis Pursuant to the Objection that Such Documents Were Generated Pursuant to an Engagement by Genesco's General Counsel, and as such, Protected from Disclosure by the Attorney-Client Privilege**

Finally, Visa contends that Genesco has improperly interfered with its ability to discover material pursuant to the subpoena it issued to IBM Security Services on March 20, 2014. As shown below, this contention is utterly baseless. It does, however, reflect the lengths Visa will go to cast aspersions on Genesco and its fidelity to the Court's March 31 Order.

The Visa Cardholder Information Security Program ("CISP") specifies that merchants exceeding certain annual transaction thresholds must annually validate their compliance with the PCI DSS. *See* http://usa.visa.com/merchants/protect-your-business/cisp/merchant-pci-dss-compliance.jsp. Merchants with more than 1 million, but less than 6 million, Visa transactions annually are normally classified as "Level 2." *Id.* Level 2 merchants are allowed to validate their PCI DSS compliance by means of an annual self-assessment. However, any Level 2 merchant that has suffered a data security breach is automatically reclassified as "Level 1." *Id.* Level 1 merchants' annual validation must be performed by a third-party Qualified Security Assessor ("QSA") approved by the Payment Card Industry Security Standards Council. *Id.* The assessment performed evaluates the compliance status of the reviewed entity as of the date of the assessment. *See* Attestation of Compliance-Merchants at 3, available at https://www.pcisecuritystandards.org/documents/pci_dss_aoc_merchants.doc.

At the time of the Intrusion, Genesco had been designated as a Level 2 merchant, and thus was required only to perform an annual self-assessment to validate its PCI DSS compliance. However, because of the Intrusion, Genesco was then automatically re-classified as a Level 1 merchant and thereby subjected to the requirement of having a QSA validate its PCI DSS compliance. *See* Orton Tr. at 467:23-468:2. Genesco accordingly retained IBM, an approved

10

QSA, to validate Genesco's compliance with the newly issued version 2.0 of the PCI DSS as of June 2011.  *See id.* at 466:16-25.  IBM was not retained to evaluate Genesco's PCI DSS compliance during the period of the Intrusion.  *See id*. at 511:18-512:25.  Nor was IBM retained in connection with the investigation of the Intrusion or to perform remediation on Genesco's network in response to the Trustwave inquiry.  *See id.* at 567:15-567:21.

Separately, in April 2011, Genesco's General Counsel engaged IBM to conduct a PCI Gap Assessment to assist Genesco's General Counsel in providing legal advice to Genesco regarding its ongoing obligations to be compliant with the PCI DSS.  *See* Affidavit of Roger Sisson, Esq. ("Sisson Aff.") ¶3; *see also* Exhibit K to the Affidavit of Randall W. Edwards ("Edwards Aff.") (Dkt. # 360).  Under this privileged engagement, IBM was not retained to evaluate Genesco's PCI DSS compliance during the period of the Intrusion, nor was IBM retained in connection with the investigation of the Intrusion or to perform remediation on Genesco's network in response to the Trustwave inquiry.  Sisson Aff. ¶¶4-5.  Pursuant to this engagement by Genesco's counsel, IBM prepared a report entitled PCI Gap Assessment.  Sisson Aff. ¶6.

On March 20, 2014, Visa served a subpoena on IBM seeking documents generally regarding the services that IBM had provided to Genesco in May and June 2011.  *See* Harrington Aff. Exhibit 5.  On April 3, 2014, IBM's counsel served objections to the IBM Subpoena, including an objection to producing any document "subject to either the work product privilege, attorney-client privilege or any other claim of privilege or immunity."  *See* Harrington Aff. Exhibit 6.  On April 24, 2014, IBM produced documents in response to the subpoena, but objected to producing the final and draft versions of the PCI Gap Assessment on the grounds that

such documents were protected by applicable privilege because they had been prepared pursuant to an engagement by Genesco's General Counsel.  *See* Edwards Aff. Ex. K.

Visa contends that IBM's withholding of these documents pursuant to a privilege objection is contrary to the Court's March 31 Order, even though the question of the privileged nature of these documents has never been the subject of a face-to-face dispute conference between the parties, let alone any order of the Court.  Even though IBM was not retained to evaluate Genesco's compliance during the period of the Intrusion or to perform any other action in response to the Intrusion, *see* Orton Tr. at 511:18-512:25; 567:15-567:21; Sisson Aff. ¶¶4-5, Visa believes that IBM was retained to perform the PCI Gap Assessment "directly in response to the Trustwave inquiry."  *See* Motion at 12.   That simply is not true.

In any event, even if it were the case that IBM's retention to perform the PCI Gap Assessment was in response to the Trustwave inquiry (which it was not), that would not make the PCI Gap Assessment discoverable under the March 31 Order.  Nothing in the Court's prior orders regarding Remedial Measures discovery purports to require that *privileged* documents or information relating to the Remedial Measures be provided to Visa by Genesco.   Here, it is undisputed that IBM prepared the PCI Gap Assessment pursuant to an engagement by Genesco's General Counsel for the purpose of assisting Genesco's General Counsel in providing legal advice to Genesco regarding its *legal* obligation to be PCI DSS compliant.  Sisson Aff. ¶3; *see also* Edwards Aff. Ex. L. The PCI Gap Assessment thus falls squarely within the attorney-client privilege, and it therefore may be properly withheld from production in response to the IBM Subpoena.[4]

---

[4] Moreover, even if the PCI Gap Assessment were in response to the Trustwave inquiry and non-privileged, it still would not be discoverable under the March 31 Order because it was not itself a "remedial measure" implemented by Genesco.

12

## CONCLUSION

For all of the reasons outlined above, the Court should deny Visa's Motion to Compel Plaintiff to Comply with the Court's Prior Orders Concerning Discovery of Remediation Measures and for Sanctions and an Expedited Hearing.[5]

/s/ Overton Thompson III
Overton Thompson III
Wendee M. Hilderbrand
BASS, BERRY & SIMS PLC
150 Third Avenue South, Suite 2800
Nashville, Tennessee 37201
(615) 742-7730
othompson@bassberry.com
whilderbrand@bassberry.com

Douglas H. Meal (admitted *pro hac vice*)
Richard D. Batchelder, Jr. (admitted *pro hac vice*)
Seth C. Harrington (admitted *pro hac vice*)
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
(617) 951-7000
douglas.meal@ropesgray.com
richard.batchelder@ropesgray.com
seth.harrington@ropesgray.com
*Attorneys for Plaintiff*

---

[5] Visa has absolutely no basis to seek sanctions here, particularly without having requested a face-to-face conference, without apparently verifying allegations that Genesco produced *no* documents regarding Remedial Measures taken in response to the Intrusion or otherwise made changes to its system security, and where the Motion is directed in large part to documents that are subject to a claim of privilege. Not only is Genesco's conduct not sanctionable, it is perfectly appropriate and fully in accord with its obligations under the March 31 Order.

13

CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing has been served, via the Court's electronic filing system, on the following:

>Gayle I. Malone, Jr.
>John M. Tipps
>Emily B. Warth
>Walker, Tipps & Malone PLC
>2300 One Nashville Place
>150 Fourth Avenue North
>Nashville, TN 37219
>
>Randall W. Edwards
>Aaron M. Rofkahr
>O'Melveny & Myers LLP
>Two Embarcadero Center, 28th Floor
>San Francisco, CA 94111
>
>Robert L. Stolebarger
>Andres L. Carrillo
>Bryan Cave LLP
>560 Mission Street, 25th Floor
>San Francisco, CA 94105

This 19th day of May, 2014.

                                                      */s/ Overton Thompson III*